IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and CHARLES A. WHOBREY, as Trustee, <br><br> *Plaintiffs,* <br><br> v. <br><br> CRANDELL BROS. TRUCKING CO., a Michigan corporation, <br><br> *Defendant.* | Case No. 20 C 5284 <br><br> District Judge <br><br> Magistrate Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Charles A. Whobrey, one of its present trustees, allege as follows:

## JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1191. Plaintiffs seek to recover employer contributions owed to the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund" or "Fund") by Defendant in accordance with an applicable collective bargaining agreement, a participation agreement, a trust agreement, and the Pension Fund's plan.

2. This Court has jurisdiction over this action under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3. Venue lies in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), in that the Pension Fund is an "employee benefit plan" as that term is defined in ERISA and is administered at its exclusive place of business in Chicago, Illinois. Venue is also

proper in this Court pursuant to the forum selection clause contained in the Pension Fund's Trust Agreement, which designates this district as the appropriate forum for lawsuits brought to collect unpaid contributions.

## PARTIES

4. The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. Plaintiff Charles A. Whobrey is a present trustee and "fiduciary" of the Pension Fund, as that term is defined in ERISA. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Whobrey is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7. Defendant, Crandell Bros. Trucking Co. ("Crandell"), is a corporation organized under the laws of the State of Michigan. Crandell is an "employer" and a "party-in-interest" as those terms are defined by ERISA §§ 3(5) and 3(14)(C), 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## **BACKGROUND INFORMATION**

8. Local Union No. 243 of the IBT ("Local 243") is a labor organization that represents, for the purpose of collective bargaining, certain employees of Crandell and employees of other employers in industries affecting interstate commerce.

### **The 2016 CBA**

9. On or around June 1, 2016, Crandell and Local 243 agreed to be bound by a collective bargaining agreement that stated it shall be effective as of July 1, 2016 (the "2016 CBA"). (A true copy of the 2016 CBA is attached hereto as Exhibit 1.)

10. Article XIV, Section 2 of the 2016 CBA provides, in part, as follows:

> The Employer agrees to pay into [the Pension Fund] for each employee covered by the [2016 CBA] who is on the regular seniority list a contribution of: ….

11. Article XX, Section 1 of the 2016 CBA ("Termination of Agreement") provides as follows:

> This Agreement shall be in full force and effect from July 1, 2016, to and including June 30, 2019 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration.

12. Article XX, Section 2 of the 2016 CBA ("Termination of Agreement") provides as follows:

> It is further provided that where no such cancellation or termination is served and the parties desire to continue said Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to June 30, 2019 or June 30 of any subsequent contract year, advising that such party desires to continue this Agreement but also desires to revise or change the terms or conditions of such Agreement. The respective parties shall be permitted all lawful economic recourse to Support their request for revisions if the parties fail to agree thereon.

13. Neither Crandell nor Local 243 sent any written notice of its intention to terminate the 2016 CBA at least sixty (60) days prior to June 30, 2019 (*i.e.* by no later than May 1, 2019), as required under Article XX, Section 1 of the 2016 CBA.

14. As a result, the 2016 CBA continued "in full force and effect from year to year thereafter," or through June 30, 2020.

15. The Pension Fund has requested that Crandell provide a copy of any written notice it or Local 243 sent pursuant to Article XX, Section 1 of the 2016 CBA.

16. The only notice that has been provided by Crandell is an April 1, 2019 letter from Local 243 to Crandell in which Local 243 states that it "desires to continue its existing agreement, but also desires to negotiate changes and revisions in such agreement" (the "April 1, 2019 Letter"). (A true copy of the April 1, 2019 Letter is attached hereto as Exhibit 2.)

**Participation Agreement**

17. Crandell and Local 243 also entered into a participation agreement (the "Participation Agreement"). (A true copy of the Participation Agreement is attached hereto as Exhibit 3.)

18. The introductory paragraph of the Participation Agreement provides, in part, as follows:

> This Agreement sets forth the terms under which the Employer will participate in the [Pension Fund] . . . in accordance with its collective bargaining agreement with the Union . . . .

19. Paragraph 1 of the Participation Agreement provides, in part, as follows:

> The Union and Employer agree to be bound by the Trust [Agreement] of the Pension Fund . . . and all amendments subsequently adopted as well as all rules and regulations presently in effect or subsequently adopted by the

Trustees of the [Pension Fund] and accept the respective Employer and Employee Trustees and their successors.

20. Paragraph 5 of the Participation Agreement provides, in part, as follows:

This Agreement and the obligation to pay contributions to the [Pension Fund] will continue after the termination of a collective bargaining agreement except no contributions shall be due during a strike unless the Union and the Employer mutually agree in writing otherwise. This Agreement and the Employer's obligation to pay contributions shall not terminate until a) the Trustees decide to terminate the participation of the Employer and provide written notice of their decision to the Employer specifying the date of termination of participation or b) the Employer is no longer obligated by a contract or statute to contribute to the [Pension Fund] and the [Pension Fund has] received a written notice directed to the [Pension Fund] Contracts Department at the address specified above sent by certified mail with return receipt requested which describes the reason why the Employer is no longer obligated to contribute or c) the date the NLRB certifies the result of an election that terminates the Union's representative status or d) the date the Union's representative status terminates through a valid disclaimer of interest …

21. Paragraph 6 of the Participation Agreement provides, in part, as follows:

When a new collective bargaining agreement is signed or the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the [Pension Fund] Contracts Department by certified mail (return receipt requested) at the address specified above. . . . The following agreements shall not be valid . . . (a) an agreement that purports to retroactively eliminate or reduce the Employer's statutory or contractual duty to contribute to the [Pension Fund] . . . or c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund.

22. Paragraph 14 of the Participation Agreement provides as follows:

This Agreement may not be modified or terminated without the written consent of the [Pension Fund]. To the extent there exists any conflict between any provisions of this Participation Agreement and any provisions of the collective bargaining agreement, this Participation Agreement shall control.

**Trust Agreement and Plan Provisions**

23. Crandell agreed to be bound by the terms of the Pension Fund Trust Agreement (the "Trust Agreement") and all rules and regulations promulgated by the Trustees under that Trust Agreement. (A true copy of the Trust Agreement is attached hereto as Exhibit 4.)

24. The first paragraph of Article III, Section 1 of the Trust Agreement provides, in part, as follows:

> Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority . . . .

25. Article III, Section 7(a) of the Trust Agreement provides as follows:

> An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement. The following provisions contained in any agreement shall not be enforceable against the Fund (regardless of when the agreement was entered into): a) a provision contained in either a collective bargaining agreement or participation agreement or any agreement entered into by an Employer and Union subsequent to the collective bargaining agreement that purports to authorize the elimination or reduction of the duty to contribute to the Fund before the termination of the collective bargaining agreement and/or participation agreement and/or other agreement under its duration provision (including any extension through an evergreen clause) and b) a provision of an agreement that purports to eliminate or reduce the duty to contribute to the Fund contained in an agreement that extends a collective bargaining agreement for a period of eighteen months or less from its termination.

26.     Article XIV, Section 4 of the Trust Agreement provides, in part, as follows:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). . . . Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

27.     Article XIV, Section 11 of the Trust Agreement provides as follows:

A participating Employer and Union that contributes to the Fund shall be bound by the provisions of this Agreement and the obligations imposed by this Agreement shall survive the termination of the participation in the Fund. To the extent there is a conflict between this Agreement and any provisions of a collective bargaining agreement and/or a participation agreement and/or any other union-employer agreement, this Agreement shall control.

28.     Section 3.01(a) of the Pension Plan provides, in part, as follows:

A Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions . . . for the *entire term* of such Collective Bargaining Agreement. (Emphasis added.)

## STATUTORY AUTHORITY

29. ERISA § 515, 29 U.S.C. § 1145, provides as follows:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

30. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), provides as follows:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

31. On or around August 2, 2019, the Pension Fund received a letter dated July 26, 2019 from Crandell (the "July 26, 2019 Letter") that attached a copy of a new collective bargaining agreement between Crandell and Local 243 (the "2019 CBA"). (A true copy of

July 26, 2019 Letter is attached hereto as Exhibit 5 and a true copy of the 2019 CBA is attached hereto as Exhibit 6.)

32. The 2019 CBA stated that it would be "in full force and effect from July 22, 2019."

33. Article XV of the 2019 CBA (401(K) Plan) provides, in part, as follows:

Effective midnight July 22, 2019 (date of ratification), the Employer shall cease its participation in the [Pension Fund] and the Employer shall have no obligation to make any contributions for employees after midnight on the effective date of this Agreement.

34. Specifically, Article XV of the 2019 CBA purports to eliminate Crandell's obligation to contribution to the Pension Fund "[e]ffective midnight July 22, 2019."

35. The last week for which Crandell paid pension contributions to the Pension Fund on behalf of employees covered by the 2016 CBA was the week ending on July 27, 2019.

36. Under Article XX, Section 1 of the 2016 CBA, the 2016 CBA remained in effect after June 30, 2019, because neither party served on the other party timely "written notice of desire to cancel or terminate" the 2016 CBA.

37. Under Article III, Section 7(a) of the Trust Agreement, paragraph 6 of the Participation Agreement, and Section 3.01(a) of the Pension Plan, Crandell's duty to contribute to the Pension Fund on behalf of employees covered by the 2016 CBA could not be terminated before June 30, 2020.

38. Under Article III, Section 7(a) of the Trust Agreement, paragraph 6 of the Participation Agreement, and Section 3.01(a) of the Pension Plan, as well as under principles of contract law applicable to third-party beneficiaries, the provision in Article XV of the 2019 CBA that purports to eliminate Crandell's duty to contribute to the Pension

Fund on behalf of employees covered by the 2019 CBA effective July 1, 2019, is not binding on the Pension Fund.

39. The Pension Fund continued to bill Crandell for pension contributions for the weeks encompassed by the period of July 28, 2019 through June 30, 2020.

40. Crandell has received contribution billing statements from the Pension Fund for the period from July 28, 2019 through June 30, 2020.

41. For the period from July 28, 2019 through June 30, 2020, Crandell has not remitted contributions to the Pension Fund, which are now past due, and has thus failed to perform its statutory and contractual duties under ERISA, the 2016 CBA, the Participation Agreement, and the Trust Agreement.

42. The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

43. Since July 28, 2019 and continuing through June 30, 2020, Crandell has not self-reported the work history of its eligible employees to the Pension Fund.

44. Because Crandell has not reported employee work history to the Pension Fund for the period from July 28, 2019 through June 30, 2020, the amount owed by Crandell is not known with specificity. However, based upon the employee work history previously reported by Crandell to the Pension Fund as of July 27, 2019, the Pension Fund estimates that Crandell owes the Pension Fund approximately $280,000 in unpaid

contributions (not including interest) for the period of July 28, 2019 through June 30, 2020. The exact contribution amount owed will be determined in the course of discovery and/or through an audit of Crandell's records.

45. Crandell has breached the provisions of the Participation Agreement and Trust Agreement by failing to furnish the Pension Fund, all information reasonably required by the Trustees in connection with the proper administration of the Pension Fund, including by failing to self-report the work history of eligible employees to the Pension Fund during the period of July 28, 2019 and continuing through June 30, 2020.

46. Alternatively, if the 2016 CBA was terminated on June 30, 2019, Crandell owes contributions through August 2, 2019 because that is the date the Pension Fund received the 2019 CBA and Crandell has breached the Participation and Trust Agreements by failing to pay contributions for the period from July 28, 2019 through August 2, 2019.

47. Under the Participation Agreement and Trust Agreement, employers who fail to pay amounts revealed to be owed by an audit are required to pay all audit fees and costs incurred in connection with the Pension Fund's audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of Plaintiffs, pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), for:

    (i) the unpaid contributions owed to the Pension Fund on behalf of all employees performing covered work for the weeks encompassed by the 2016 CBA period of July 28, 2019 through June 30, 2020 (*i.e.* the weeks from July 28, 2019 through June 30, 2020);

      (ii)    interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

      (iii)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

      (iv)    attorneys' fees and costs and any audit fees and costs incurred by the Pension Fund;

    (b)    Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

    (c)    For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

/s/Anthony E. Napoli
Anthony E. Napoli
Attorney for Plaintiffs
Central States Funds
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
(847) 939-2469
ARDC # 06210910
tnapoli@centralstates.org

September 8, 2020